Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2918 | **DATE** | 1/11/2005 |
| **CASE TITLE** | Valentine vs. City of Chgo, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, defendants City of Chicago's, John Tominello's, and Mike DiTusa's motions for summary judgment are granted in their entirety. All pending dates and motions are hereby stricken as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 2005 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 102 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| MW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DONNA VALENTINE, )
 )
      Plaintiff, )
 )
v. ) No. 03 C 2918
 )
CITY OF CHICAGO, a municipal )
corporation JOHN TOMINELLO, )
MIKE DITUSA, and JOSEPH SENESE, )
 )
      Defendants. )

DOCKETED
JAN 1 1 2005

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant City of Chicago's ("City") motion for summary judgment, Defendant John Tominello's ("Tominello") motion for summary judgment, and on Defendants Mike DiTusa's ("DiTusa") and Joseph Senese's ("Senese") motion for summary judgment. For the reasons stated below, we grant Defendants' motions in their entirety.

## BACKGROUND

In July of 1993, Plaintiff Donna Valentine ("Valentine") began working for the City Department of Transportation. In 1998, Valentine worked at the Bosworth

1

102

yard location as a motor truck driver and a sweeper. As a motor truck driver Valentine was required to maintain the truck and transport equipment and personnel between locations. Defendant Tominello was another motor truck driver that worked at the Bosworth yard location with Valentine. Defendant DiTusa also worked at the Bosworth yard as the Lot Supervisor. From June of 2002 to May of 2003, Defendant Senese was the Acting General Foreman and was responsible for the supervision of all of the City yards. Senese supervised motor truck drivers, dispatched trucks and performed other administrative functions in the office.

Valentine claims that she was sexually harassed by Tominello at work. Specifically, Valentine claims that Tominello would comment about her rear end and her breast and would make references to the possible contact with certain body parts of Valentine. Valentine contends that Tominello would ask Valentine to leave her fiancé and date him instead and asked her out on a date many times and asked her to go out to dinner between thirty and forty times. Valentine contends that Tominello made two or three inappropriate comments to her two or three times a week in between March of 2002 and September of 2002. Valentine also claims that Tominello rubbed his crotch over his pants in front of her just about every day between March of 2002 and September of 2002. Valentine also contends that Tominello told her that he was going to Chinatown to get a massage and to get his "pipes cleaned" while gesturing at his crotch area. Valentine claims that Tominello stroked her arm or shoulder approximately six times. According to Valentine, the

2

comments and actions by Tominello were unwanted and she claims that she complained to DiTusa about Tominello's conduct approximately ten times.

According to Valentine, on September 25, 2002, at 6:00 a.m. she went into DiTusa's office when DiTusa, Tominello, and other motor truck drivers were present. Valentine claims that in front of the others, Tominello harassed her orally and then took a powdered cookie and made a motion with it as if to masturbate with it and got powdered sugar on Valentine's crotch area and right thigh. Valentine claims that she got angry and engaged in an oral confrontation with Tominello. Valentine claims that later that day she found spit which appeared to contain pieces of a cookie on her driver's side door window. Valentine claims that she complained to DiTusa and that when she next returned to her car she found a four or five inch plastic penis under her windshield wiper. Later on September 25, 2002, Valentine complained to Senese. On September 26, 2002, Valentine told DiTusa that she had talked to Senese about the incident and Valentine claims that DiTusa told her "Now you have done it, now you're going to bring heat on all of us." The day after Valentine complained to Senese, Tominello was transferred to a different yard.

Valentine went to the Sexual Harassment Office on September 27, 2002, to file a complaint. On October 24, 2002, Valentine noticed that Tominello was at the Bosworth Yard and so she locked herself in her car and called Senese who told her that Tominello's presence at the Bosworth Yard was due to an oversight. Valentine contends that on October 25, 2002, while she was in DiTusa's office she saw DiTusa

writing down the names of individuals listed as witnesses in her sexual harassment complaint. Valentine claims that DiTusa swore and threw a chair against the wall. In November of 2002, Valentine was transferred to the O'Hare Yard. In January of 2003, Valentine requested to be transferred to the Department of Water Management, and in April of 2003 she was transferred.

Valentine claims that Defendants retaliated against her for filing the sexual harassment complaint by giving her an unwarranted one-day suspension on December 11, 2002 for dereliction of duty. She served a one-day suspension which was later rescinded. Valentine also claims that she was retaliated against when her request regarding vacation carryover did not get to payroll. She also claims that when she called in sick on December 16, 2002, that it was recorded as "absent no pay" rather than as "sick no pay." Valentine claims that she was retaliated against on February 26, 2003, when she was issued a written reprimand for allegedly threatening Tominello. She also claims that Defendants retaliated against her by continually losing her paperwork. Finally, Valentine claims that she was retaliated against when she received a harassing phone call on her cell phone, when she was ignored by co-workers, and when she was called a rat by Anthony Moreno.

On March 19, 2003, Valentine filed a charge with the Equal Employment Opportunity Commission alleging sexual discrimination. Valentine then filed the instant action and included in her first amended complaint an equal protection claim against the City, Tominello, DiTusa, and Senese based upon 42 U.S.C. § 1983

("Section 1983")(Count I), a Section 1983 retaliation claim against the City, Tominello, DiTusa, and Senese (Count II), a sexual harassment claim against the City based upon violations of Title VII of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C. § 2000e *et seq.*, (Count III), an intentional infliction of emotional distress claim ("IIED") against Tominello and DiTusa (Count IV), a willful and wanton assault claim against Tominello and DiTusa (Count V), a battery claim against Tominello (Count VI), and a claim alleging a violation of the Illinois Hate Crimes Act, 720 ILCS 5/12- 7.1, against Tominello (Count VII).

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."*Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest

on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Section 1983 Municipal Liability Claim

The City moves for summary judgment on the Section 1983 municipal liability claims. The doctrine of *respondeat superior* cannot be utilized to hold local governmental units liable for Section 1983 violations. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). A municipal governmental unit cannot be held liable under Section 1983 "unless the deprivation of constitutional rights is caused by a municipal policy or custom." *Kujawski v. Board of Comm'rs. Of*

*Bartholomew County, Indiana*, 183 F.3d 734, 737 (7ᵗʰ Cir. 1999). A local governmental unit's unconstitutional policy, practice, or custom can be shown by: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a "custom or usage" with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7ᵗʰ Cir. 2004). Valentine has not shown that any express policy or practice was behind the alleged harassment or alleged failure to prevent the harassment. Neither has Valentine shown that any City employee with policymaking authority was involved in the alleged misconduct. The evidence presented is limited to events surrounding Valentine and a limited reference to another City employee that Tominello had previously worked with. The events in question and the presented evidence regarding the alleged misconduct by Tominello and Valentine's interaction with DiTusa do not in any way implicate the City's policies or practices. Therefore, we grant the City's motion for summary judgment on all Section 1983 claims.

## II. Hostile Work Environment Claim Against City

The City moves for summary judgment on the hostile work environment claims. We need not address whether or not Valentine's work environment constituted a hostile work environment because the City has shown that it corrected

7

the problem when properly notified. An employer cannot be held liable for harassment by a non-supervisor co-worker unless the employer failed to take "reasonable steps to discover and rectify acts of sexual harassment of its employee[]." *Parkins v. Civil Constructors of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)(quoting in part *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1995)). In regards to the incidents on September 25, 2002, the City acted in a timely fashion to remedy the problem. Valentine admits that the day after the incidents, Tominello was transferred to another yard. ( R City SF 24, 28, 30, 32). In regards to the other alleged misconduct by Tominello prior to September 25, Valentine has failed to show that she properly notified the City of the problem prior to September 25, 2002.

Valentine claims that she complained to DiTusa approximately ten times and that he said that he would take care of the problem. Valentine admits that she did not complain to anyone other than DiTusa during the six month period. ( R City SF 55). Valentine has not pointed to sufficient evidence that would indicate that she reasonably believed that DiTusa was the proper contact person for the alleged harassment. Pursuant to Local Rule 56.1 Valentine admits that DiTusa did not: 1) receive any more pay than other motor truck drivers ( R DS SF 25), 2) have authority to hire an employee ( R DS SF 39), 3) have authority to terminate, promote or demote an employee ( R DS SF 40-41), 4) have authority to transfer an employee out of the Department, or 5) "evaluate Plaintiff's work performance in any way" or

8

issue feedback or evaluations to Valentine ( R DS SF 43-44). DiTusa testified at his deposition that at times he himself drives a truck on assignments. (D1 dep. 25). DiTusa also explained that he performed some administrative duties by compiling the attendance data provided to him by the other truck drivers on worksheets and forwarding the worksheets on to Senese for his review. (D1 dep. 21-23).

Also, although in response to the City's statement of facts Valentine attempts to contest whether DiTusa evaluated her work, as indicated above, Valentine admitted the fact as true pursuant to Local Rule 56.1 in response to DiTusa's and Senese's statement of material facts. The City asserts in its statement of fact number 10 that DiTusa did not evaluate Valentine's work or have authority to discipline her and that he never disciplined her. However, although Valentine denies fact number 10, Valentine fails in her response to the City's statement of fact number 10 to cite to evidence to support her denial as is required under Local Rule 56.1. Valentine merely cites to her statement of additional facts which is not evidence and fact number 10 is therefore deemed admitted. Valentine claims that DiTusa transferred employees to other yards, but she admitted during her deposition that she has no basis other than her own personal belief that DiTusa in fact transferred other employees to other yards. (Val. Dep. 311-12). Valentine claims in her briefs that DiTusa disciplined employees, but again Valentine has failed to point to sufficient evidence that would indicate that such a belief is based on nothing more than her own speculation. This belief is inconsistent with her deposition testimony where she

acknowledged that she was never disciplined by DiTusa and that she was not aware that DiTusa had ever recommended that another employee be subjected to discipline. (Val. Dep. 39). She indicated at her deposition that DiTusa could do so, but admitted that he would simply complain to the general foreman as would any other truck driver. (Val. Dep. 40). Valentine also acknowledged at her deposition that DiTusa never evaluated her work. (Val. Dep. 34).

Valentine admits pursuant to Local Rule 56.1 that in March of 2000, she attended a Violence in the Workplace Training Session and that "[i]nformation on the City of Chicago's Sexual Harassment Policy, including procedures for filing of sexual harassment complaints and the telephone number and the address of the City's Sexual Harassment Office was included in the Violence in the Workplace training that plaintiff attended. . . ." ( R City SF 80-81). *See Parkins*, 163 F.3d at 1030(stating that a court should consider "whether the employer has designated a channel for complaints of harassment " and that "[w]here an employer sets up a 'point person' to accept complaints, 'this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case.'"). No reasonable trier of fact could conclude that Valentine acted reasonably believing that DiTusa was the proper person in the chain of comand to complain to about sexual harassment. Valentine was provided with contact information to the Sexual Harassment Office and she could not reasonably have believed that DiTusa was her supervisor and was the proper person to complain to

about the alleged harassment. When Valentine decided that the alleged harassment was of such a degree that she should report it, she found it prudent to contact individuals in the supervisory chain who had authority to receive complaints and to correct the problem. Valentine brought the problem to the attention of Senese who then brought it to the attention of the Sexual Harassment office. This was the first time that she properly notified the City. The City took prompt action to correct the problem when it was notified. Tominello was merely a co-worker of Valentine's and, although the alleged conduct by Tominello is deplorable, there is not sufficient evidence that shows that Valentine brought the matter to the attention of the City until after the September 25, 2002, incidents. *See Parkins*, 163 F.3d at 1035(stating that "[i]t 'would be unrealistic to expect management to be aware of every impropriety committed by every low-level employee" and that "notice or knowledge of the harassment is a prerequisite for liability."). Therefore, we grant the City's motion for summary judgment on the hostile work environment claims.

## III. Section 1983 Equal Protection Claims

Defendants move for summary judgment on the equal protection sexual harassment claims brought pursuant to Section 1983.

### A. Acting Under Color of State Law

One major distinction between a Title VII claim and a Section 1983 claim is

11

that a Section 1983 claim is based upon conduct of the state. A plaintiff bringing a Section 1983 claim is required to establish that: 1) his "constitutional rights were violated," and 2) "the defendants acted under color of state law." *Lawline v. American Bar Ass'n*, 956 F.2d 1378, 1384 (7th Cir. 1992). Valentine has utterly failed to point to evidence that shows that, in regards to the alleged harassment, DiTusa, Senese, or Tominello acted under the color of state law. Neither DiTusa nor Senese were supervisors for Section 1983 purposes. Even if Senese was deemed a supervisor, in acting on behalf of the City, the evidence is clear that he acted entirely appropriately. There is no indication from the evidence that Tominello, as a mere co-worker, was acting in a role other than on his own behalf. Thus, the absence of any showing that a Defendant acted under the color of state law dictates that we grant Defendants' motion for summary judgment on the Section 1983 equal protection claims.

### B. Intent

In addition, unlike a Title VII sexual harassment claim, for an equal protection claim a plaintiff must establish an intent to harass. *King v. Board of Regents of University of Wisconsin System*, 898 F.2d 533, 537-38 (7th Cir. 1990). Valentine has failed to point to any evidence that shows that Senese intended to harass her or condone harassment. In fact, the evidence indicates that Senese lacked any such intent. For example, the day after Valentine complained to Senese about Tominello,

12

Tominello was transferred to another yard. Neither has Valentine pointed to any evidence that DiTusa had the requisite intent to harass or intent to condone harassment. Valentine's vague contention that she complained to DiTusa and that the harassment continued is insufficient to show intent and would leave such a finding of intent entirely to the speculation of the trier of fact.

### C. Personal Involvement

The Seventh Circuit has made it clear that "[t]he doctrine of *respondeat superior* does not apply to § 1983 actions...." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Thus, an individual cannot be held liable under Section 1983 in his individual capacity unless he "participated directly in the constitutional violation." *Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003)(stating that "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). For a supervisor to be held liable under Section 1983 for acting in his supervisory role, a plaintiff must show that the supervisor directed the constitutional deprivation or that it occurred with his "knowledge and consent." *Id.* (indicating that a plaintiff must show that the supervisor knew "about the conduct[ed] and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye."). Valentine has presented no evidence that would indicate that Senese looked the other way or otherwise was involved in the

13

harassment by Tominello. The evidence is clear that on September 25, 2002, when Valentine informed Senese about the harassment, he immediately took steps to correct the problem. Valentine also argues that another female employee at another yard had previously made a complaint about Tominello and therefore Senese "had the knowledge that Tominello posed a risk to plaintiff because she is a female." (V. Ans. Sen. Mot. 7). We are not persuaded that Senese can reasonably be deemed to have turned a blind eye to the alleged harassment against Valentine simply because Senese knew that there had been a prior complaint against Tominello made by another employee.

V. Retaliation Claims Against Senese and DiTusa

Senese and DiTusa move for summary judgment on the Section 1983 retaliation claims against them. For the reasons stated above, summary judgment can be granted on these claims because neither Senese nor DiTusa acted under color of state law. Also, for a Section 1983 retaliation claim, a plaintiff must establish that: 1) "his speech was on a matter of public concern," and 2)"his speech played at least a substantial part in his employer's decision to take an adverse employment action against him." *McGreal v. Ostrov*, 368 F.3d 657, 672 (7th Cir. 2004). If the plaintiff establishes the above two elements, "the defendants may prevail only if, third, they can prove that the government's interest as an employer in efficiently providing government services outweighs [the plaintiff's] First Amendment

14

interests, or if, fourth, they can prove that they would have disciplined [the plaintiff] even in the absence of his speech." *Id.*

Senese and DiTusa argue that Valentine has not shown that she suffered any adverse employment action as part of retaliation. We agree that none of the adverse circumstances alleged by Valentine constitute an adverse employment action. Also, there is an absence of evidence to show that any of the alleged adverse circumstances occurred as a result of Valentine's speech.

Valentine complains that she was given a reprimand for dereliction of duty, but the discipline was eventually rescinded and she was given her pay for the day. Valentine claims that she was retaliated against when her request regarding vacation carryover did not get to payroll and when she called in sick on December 16, 2002, and it was recorded as "absent no pay" rather than as "sick no pay." However, there is no evidence that Senese or DiTusa were responsible for the errors or that they were done due to an intent to retaliate against Valentine. Valentine also claims that she was retaliated against by Defendants when they continually lost her paper work, when she received a harassing phone call on her cell phone, and when she was ignored by co-workers, and was called a rat by Anthony Moreno. However, there is no evidence that Senese or DiTusa were responsible or that her complaint was a substantial reason for the actions. Therefore, we grant the motion for summary judgment on the retaliation claims.

15

## VI. State Law Claims

For the reasons indicated above, we grant summary judgment on all of the federally based claims. Valentine acknowledges in her amended complaint that the court merely has supplemental jurisdiction over the state law claims. Under 28 U.S.C. § 1367(c)(3), a federal district court may dismiss a plaintiff's supplemental state law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision to dismiss supplemental claims is discretionary. *Larsen v. City of Beloit*, 130 F.3d 1278, 1286 (7th Cir.1997). The Seventh Circuit has stated that where a court dismissed a federal claim and the sole basis for invoking federal jurisdiction is now nonexistent, that court should not exercise supplemental jurisdiction over remaining state law claims. *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 300 (7th Cir. 2003)(stating that if there is a dismissal of the original jurisdiction claim and only a supplemental jurisdiction claim remains "the sole basis for invoking federal jurisdiction is nonexistent and the federal courts should not exercise supplemental jurisdiction over his remaining state law claims."); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts."); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994)(stating that in exercising that discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of

judicial resources. . . ."). Valentine has not raised any concerns such as statute of limitations problems with the state law claims and we conclude that no exception to the general rule is applicable and that it is appropriate to dismiss the remaining state law claims.

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motions for summary judgment in their entirety and dismiss the remaining state claims. All other pending motions are denied as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 11, 2005